NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDON P. WOLCOTT,<br><br>  Plaintiff,<br><br>v.<br><br>CHUCK THADES, *et al.*,<br><br>  Defendants. | Civil Action No. 23-22300 (RK) (JTQ)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Brandon P. Wolcott's ("Plaintiff") application to proceed *in forma pauperis* ("IFP," ECF No. 4), together with his Complaint,[1] ("Compl.," ECF No. 5), against Defendants Chuck Thades ("Thades") and TowBoatUS Barnegut Light[2] ("TB Barnegat") (together, the "Defendants"). For the reasons explained below, the application to proceed IFP is **GRANTED**, and the Complaint is **DISMISSED** in part.

**I.    BACKGROUND**

Plaintiff brings this action for negligence, for breach of contract, and pursuant to the Ports and Waterways Safety Act, 33 U.S.C. §§ 1221, *et seq.* in connection with an alleged incident involving damage to his vessel, the Bolero, on September 9, 2020.[3] After discovering his vessel

---

[1] The initial Complaint filed at ECF No. 1 is not meaningfully filled in, therefore the Court will consider the complaint filed at ECF No. 5 to be the operative Complaint.

[2] It appears Defendant's proper name is TowBoatUS Barnegat Light.

[3] All of the following facts are taken as true for the purposes of the 28 U.S.C. § 1915 screen and are taken from pages 3 and 4 of the Complaint, unless stated otherwise.

had a dead battery while traveling from New York City to North Carolina, Plaintiff "contacted Sea Tow, of which he was a member, to request a tow to the nearest marine facility in Barnegat Bay."[4] Since Sea Tow had "no available boats within range," they purportedly contacted a "subcontractor," TowBoatUS, who in turn contacted its local affiliate in Barnegat Bay, Defendant TB Barnegat. Subsequently, Defendants spoke to Plaintiff and formulated a plan to reach him and tow the vessel to the Silver Cloud Marina. Once Defendants reached Plaintiff, they inspected the vessel "passed the tow lines [and] placed [them] on the two cleats at the bow." Defendants instructed Plaintiff "to be at the helm during the tow and to steer the Bessel appropriately behind the tow boat."

The critical facts related to the asserted claims begin now. Plaintiff states: "Within minutes of the tow commencing, the plaintiff, having to exert substantial strength to control the helm, noted the excessive speed, and estimated it to be approx. 13 knots." Plaintiff notes his belief that "this is the fastest we have seen her (Bolero) go" and whose "estimated speed of the tow was confirmed/corroborated by [a] crew member/witness." At this point, Plaintiff attempted to call the operator of the tugboat, but "was interrupted by his discovery [of] water entering in the rear cabin of the vessel." Thereafter, "contact was successfully made with the tow operator who responded by increasing the speed of the tow towards a sand bar within the Barnegat Inlet." The vessel was then "grounded on a sandbar within Barnegat Bay" "with over 3 feet of water in the cabins." Shortly thereafter, the Coast Guard and Defendant Thades arrived at the scene.

---

[4] In a few instances in the Complaint, Plaintiff appears to say Defendant instead of Plaintiff. *See* Compl. at 3 ("On September 9th, 2020, after 30 hours underway via sail from New York City to North Carolina, the ***defendant*** discovered a dead battery upon attempting to start the engine of his Freedom 40 sailing vessel." (emphasis added); *see also id.* ("The operator instructed the ***defendant*** to be at the helm during the tow and to steer the vessel appropriately behind the tow boat.") (emphasis added); *see also id.* at 4 ("Over the next 10 days, as the ***defendant*** sought to engage another tow operator to salvage the boat and the belongings on board . . . ." (emphasis added). The Court will assume the Plaintiff meant himself in theses instances, rather than defendant.

2

Initially, "defendants agreed to execute salvage for $6,000," (i.e., save and rescue the vessel) but after determining "the root cause [w]as an open compartment breached by seawater, [they] made note of this to Mr. Thades [and] the $6000 payment was returned." Plaintiff then claims his phone "number was blocked by the defendant, cutting off all communication." As the vessel "continued to sink deeper into the sand (approx. 6 feet)," Plaintiff "sought to engage another tow operator to salvage the boat and the belongings on board." Ultimately, Defendants executed the salvage of the vessel for $65,000 paid by Plaintiff's insurance, Progressive Insurance. By this time, the vessel was damaged from the sand accumulating within the cabin. Plaintiff claims there is "irreparable damage to the structure of the hull, the propeller, the rudder system and countless other instances of cosmetic damage." In addition to the damage to the vessel, "[a]ll of the personal belongings and sailing accoutrements had been submerged in salt water for days, ruining any objects not meant to withstand salt or submersion."

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1915, a plaintiff may proceed *in forma pauperis* without paying a filing fee. The Court engages in a two-step analysis when considering IFP applications: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse*, No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)). The IFP statute requires that a plaintiff demonstrate financial need through the submission of a complete financial affidavit. *See Atl. Cty. Cent. Mun. Court Inc. v. Bey*, No. 24-0105, 2024 WL 1256450, at *1 (D.N.J. Mar. 22, 2024) (citing 28 U.S.C. § 1915(a)).

## III. DISCUSSION

### A. IFP

Here, Plaintiff sufficiently completed the Long Form Application to Proceed in District Court Without Prepaying Fees or Costs. (*See* IFP.) Plaintiff lists a total monthly income of between $2,000 and $2,500 per month in addition to some funds in a checking account at Citibank. (*Id.* at 1–2.) Plaintiff identifies expenses of approximately $2,150 per month, which includes utilities, home maintenance, food, clothing, laundry, medical expenses, and a loan. (*Id.* at 4–5.) Plaintiff also indicates that he was employed as a sound engineer working in theatre, but the Covid-19 pandemic caused the industry to shut down. (*Id.* at 5.) Pertinent to the substance of the action, he indicates he "purchased a sailboat to start a chartering business, which would later sink while being towed unsafely (also the nature of the suit)." (*Id.*) He says this incident caused him significant financial hardship and is "currently rebuilding now that [the theatre] industry has returned." (*Id.*) Based on his application, the Court finds that Plaintiff has pled his circumstances regarding his ability to pay with sufficient particularity and **GRANTS** Plaintiff's *in forma pauperis* application.

### B. COMPLAINT SCREEN

In turning to the screening of the Complaint, the Court will first discuss its jurisdiction. Federal courts have original jurisdiction over admiralty or maritime cases. 28 U.S.C. § 1333. This means that since the alleged actions here took place at sea, admiralty jurisdiction is proper. *See In re DeGeorge*, No. 22-3018, 2023 WL 8451225, at *2 (3d Cir. Dec. 6, 2023); *see also Olmo v. Atl. City Parasail, LLC*, No. 13-4923, 2016 WL 1704365, at *7 (D.N.J. Apr. 28, 2016) (admiralty jurisdiction is also invoked if "the actions giving rise to the alleged tort have the potential to disrupt maritime commerce and 'bear a significant relationship to traditional maritime activity.'" ((quoting

4

*Sisson v. Ruby*, 497 U.S. 358, 364–66 (1990)).[5]

### 1. PORTS AND WATERWAYS SAFETY ACT ("PWSA")

The first cause of action that Plaintiff alleges is pursuant to the Ports and Waterways Safety Act ("PWSA"), 33 U.S.C. § 1221, *et seq*. While the Court doubts the Complaint alleges a claim under the PWSA, it was, nevertheless, repealed in 2018. Indeed, certain sections of the PWSA were transferred to 46 U.S.C. 700001, *et seq*., but there is no valid private cause of action that can be gleaned under those sections either. Therefore, the statutory claim under the PWSA must be dismissed.

### 2. BREACH OF CONTRACT

Plaintiff also asserts a breach of contract claim, but it cannot survive either. A "complaint alleging breach of contract must, at a minimum, identify the contracts *and provisions* breached." *L. Off. of Drew J. Bauman v. Hanover Ins. Co.*, No. 22-4551, 2023 WL 2238552, at *3 (D.N.J. Feb. 27, 2023) (internal quotation and citation omitted). Here, Plaintiff fails to attach the contract or discuss any provisions Defendants are alleged to have breached, and thus, the breach of contract claim must be dismissed.

### 3. NEGLIGENCE

The final claim is for negligence in Defendants' towing of Plaintiff's vessel resulting in damage to the same. The Third Circuit described negligence in the admiralty context as "essentially coextensive with its common law counterpart, requiring:"

> (1) the existence of a duty required by law which obliges the person to conform to a certain standard of conduct; (2) a breach of that duty by engaging in conduct that falls below the applicable standard or norm; (3) a resulting loss or injury to the plaintiff; and (4) a reasonably close causal connection between the offending conduct and the resulting injury.

---

[5] According to the Complaint the parties are of different states and the amount in controversy is over $75,000 so at this point, the Court would have diversity jurisdiction as well.

5

*In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 207 (3d Cir. 2013) (cleaned up).

Defendants are not without certain duties during the tow. They must exercise "reasonable care and maritime skill as prudent navigators employ for the performance of similar service." *Stevens v. The White City*, 285 U.S. 195, 202 (1932); *In re B & J Inc.*, 672 F. Supp. 3d 192, 207 (W.D. La. 2023). Relevant duties include (i) "keep[ing] a close watch over the vessel under tow," Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 12:3 (6th ed. 2019); (ii) "follow[ing] proper towing procedures," *id.*; and (iii) "sav[ing] the tow from sinking if possible," Robert Force, *Admiralty & Maritime Law* 154 (2nd ed. 2013).

In drawing all reasonable inferences in favor of the Plaintiff, the allegations in his Complaint preclude dismissal of the negligence claim at this juncture. *First,* tugs generally have a duty to exercise reasonable care during their tow of a vessel. *Second,* Plaintiff alleges that Defendants breached this duty by towing his vessel at an unexpectedly high speed. *Third,* Plaintiff alleges that his vessel suffered water damage resulting in damage to the vessel, salvage costs, and damage to his personal belongings that were on the vessel. *Fourth,* Plaintiff alleges a causal connection between the high speed of tow and the damage and loss he suffered. Accordingly, Plaintiff's negligence claim survives.

For these reasons, the Complaint is **DISMISSED** in part, with Plaintiff's negligence claim having sufficient merit to proceed under the Court's *sua sponte* screening under 28 U.S.C. § 1915(e).

Accordingly, **IT IS** on this 26 day of November, 2024,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** without prejudice; and it is further

**ORDERED** that Plaintiff's claim of negligence may proceed; and it is further

**ORDERED** that Plaintiff's claim under the Ports and Waterways Safety Act is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff's claim of breach of contract is **DISMISSED** without prejudice; and it is further

**ORDERED** that upon Plaintiff's sending of the completed USM-285 form to the Clerk of the Court, the Clerk shall issue summons, and the United States Marshal shall serve a copy of the complaint, summons, and this Memorandum Order upon Defendant pursuant to 28 U.S.C. § 1915(d), with all costs of service advanced by the United States.[6]

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

---

[6] Alternatively, the U.S. Marshal may notify Defendant that an action has been commenced and request that Defendant waive personal service of a summons in accordance with Fed. R. Civ. P. 4(d).