NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDON P. WOLCOTT,<br><br>Plaintiff,<br><br>v.<br><br>JERSEY SHORE BOAT TOWING AND SALVAGE INC., *et al.*,<br><br>Defendants. | Civil Action No. 23-22300 (RK) (JTQ)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendants TowBoat U.S. Barnegat Light's ("TowBoat") and Charles Tharp's (together with TowBoat, the "Moving Defendants") Motion to Dismiss *pro se* Plaintiff Brandon P. Wolcott's Third[1] Amended Complaint. (ECF No. 31; "Mot. Br.," ECF No. 35.) Thus, this is Plaintiff's fourth operative complaint. Plaintiff opposed the Motion ("Opp. Br.," ECF No. 37), and the Moving Defendants replied ("Reply Br.," ECF No. 39).[2] Having considered the parties' submissions, the Court resolves the pending Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Moving Defendants' Motion to Dismiss (ECF No. 31) is **GRANTED** in part and **DENIED** in part.

---

[1] Although Plaintiff's operative pleading is listed on the docket as his "Second Amended Complaint" (*see* ECF No. 24), the procedural history of this case indicates this is actually his *third* amended pleading. (*See* ECF Nos. 1, 5, 15, 24.)

[2] Following the Moving Defendants' reply briefing, Plaintiff filed a Motion for Leave to File a Sur-Reply. (ECF No. 40.) Plaintiff sought to clarify that he does not intend to bring a claim for gross negligence in this action. (*Id.*) Because the Motion itself offers the necessary clarification, there is no need for Plaintiff to file a separate brief addressing same. Therefore, Plaintiff's Motion (*id.*) is **DENIED**.

I. **BACKGROUND**[3]

This case stems from damages to *pro se* Plaintiff's sailboat, the *Bolero*, sustained during a rescue and salvage attempt. On November 9, 2020, Plaintiff, a resident of New York, was sailing from New York to North Carolina with an associate. ("TAC," ECF No. 24 at 1, 3.) While passing by the Barnegat Bay Inlet, the battery on Plaintiff's vessel, a Freedom 40 sailboat, died. (*Id.*) Plaintiff contacted a third-party towing organization which put Plaintiff in contact with Defendant TowBoat to provide towing services. (*Id.*)

TowBoat arrived at the *Bolero*'s position, and as the tow went underway, both Plaintiff, "an accomplished sailor with thousands of hours logged at sea," and his associate noted that the *Bolero* was being towed at an "excessive speed"—the "fastest" they had ever observed the *Bolero* moving. (*Id.*) At that point, Plaintiff discovered water entering the rear cabin of the boat. (*Id.*) Plaintiff contacted the tow operator, who increased the speed of the tow and sailed toward a sandbar in Barnegat Inlet. (*Id.*)

By the time the *Bolero* reached the sandbar, there was "over 3 feet of water in the cabins." (*Id.*) Thirty minutes later, the U.S. Coast Guard and Defendant Tharp, the owner of TowBoat and Defendant Jersey Shore Boat Towing and Salvage Inc. ("Jersey Shore") arrived. (*Id.* at 4.) Defendants agreed to salvage (*i.e.*, save and rescue) the *Bolero* for $6,000. (*Id.*) However, after Plaintiff discovered that the *Bolero*'s leak was caused by "an open compartment breached by seawater," and he communicated this to Tharp, Tharp cut off communication with Plaintiff and returned his $6,000. (*Id.*)

---

[3] The Court accepts all of the factual allegations in the Third Amended Complaint ("TAC") as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Over the next ten days, Plaintiff sought out another tow operator to salvage the *Bolero* as it sank six feet into the sand. (*Id.*) For reasons unexplained in the TAC, the *Bolero* was ultimately salvaged by Tharp for $65,000 (paid by Plaintiff's insurer). (*Id.*) At that point, however, the damage to the *Bolero* was irreparable; there was damage to the hull structure, the propeller, the rudder system, and "numerous other structural and cosmetic elements." (*Id.*) Plaintiff's personal belongings and sailing equipment on board also suffered water damage. (*Id.*)

Plaintiff filed an initial Complaint and *in forma pauperis* application in this Court against Defendants Tharp (improperly pled as "Chuck Thades") and TowBoat. (ECF No. 1.) Because there were technical issues with viewing Plaintiff's allegations in the form Complaint, Plaintiff filed a First Amended Complaint ("FAC") against the same Defendants shortly thereafter. (ECF No. 5.) The FAC contained claims against the Moving Defendants for negligence, breach of contract, and pursuant to the Ports and Waterways Safety Act, 33 U.S.C. §§ 1221, *et seq.* (*Id.*)

On November 26, 2024, the Court granted Plaintiff's application to proceed *in forma pauperis* and dismissed the FAC in part, permitting only the claim for negligence to proceed. (ECF No. 7.) On March 4, 2025, Plaintiff filed a Second Amended Complaint ("SAC") (i) alleging only a claim of negligence, (ii) correcting Defendant Charles Tharp's name, and (iii) adding Jersey Shore Boat Towing and Salvage Inc. as a Defendant, because "Jersey Shore Boat Towing and Salvage Inc. owns, operates, and/or manages the vessels and towing services conducted under the name TowBoat U.S. Barnegat Light." (ECF No. 15 at 1.) The operative TAC, filed a month later, is substantively similar to the SAC but corrects the date on which the alleged incident occurred. (TAC at 1 ("This amended complaint corrects the date of the incident from September 9, 2020, to the correct date of November 9, 2020.").)

With respect to Plaintiff's negligence claim against Defendants, Plaintiff specifically alleges that Defendants (i) failed to tow at a safe speed; (ii) failed to "respond to emergency conditions promptly"; and (iii) failed to conduct "timely salvage operations." (*Id.* at 4.) He seeks $400,000 for damage to personal belongings, destruction of the *Bolero*, loss of income, salvage costs, and emotional distress. (*Id.* at 4–5.)

Defendant Jersey Shore answered the TAC on July 9, 2025. (ECF No. 36.) The Moving Defendants, however, moved to dismiss the TAC on July 8, 2025. (ECF No. 31.) They argue that "TowBoat" is solely a trade name not amenable to suit and that the TAC fails to state a claim as to Tharp. (*See generally* Mot. Br.) In opposition, Plaintiff concedes that TowBoat is a trade name but argues that the TAC sets out sufficient facts to support a negligence claim against Tharp. (*See generally* Opp. Br.)

## II.    **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under this Rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). However, the Court "need not credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lack[ing] any arguable factual or legal basis" or that "surpass all credulity." *Degrazia v. F.B.I.*, No.

08-1009, 2008 WL 2456489, at *3 (D.N.J. June 13, 2008) (citations and quotation marks omitted), *aff'd*, 316 F. App'x 172 (3d Cir. 2009).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854, at *2 (D.N.J. Mar. 10, 2021) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

A *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Notwithstanding the liberal interpretation, a *pro se* plaintiff "must still plead the essential elements of [his] claim." *Alfred v. Atl. City Police Dep't Swat*, No. 14-7536, 2015 WL 5823057, at *1 (D.N.J. Oct. 1, 2015) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

## III.   DISCUSSION

The Court first addresses the parties' arguments with respect to TowBoat before turning to assessing their arguments as to Tharp.

5

A. **DEFENDANT TOWBOAT**

The Moving Defendants assert that TowBoat "is a fictitious entity." (Mot. Br. at 9.) More specifically:

> Jersey Shore uses the trademarks of BoatUS/TowboatU.S. pursuant to a license agreement. As part of this agreement, Jersey Shore identifies itself by the trademark "TowboatU.S." and the name(s) of the geographic region(s) for which Jersey Shore holds said license. In this case, Jersey Shore is licensed to operate within the geographic regions of Barnegat Light and Beach Haven, New Jersey. Hence the name "TowboatU.S. Barnegat Light & Beach Haven."

(*Id.* at 8–9.)

Plaintiff reasons that he "interacted with and was towed by" a vessel operating under the name "TowBoat," but concedes that Jersey Shore "is the legal entity operating under this name." (Opp. Br. at 1; *id.* at 2 ("Plaintiff's position [is] that Jersey Shore is the proper legal entity responsible for the acts alleged.").) Nonetheless, Plaintiff argues that TowBoat should remain a defendant because this trade name "identif[ies] the party responsible for the acts in question." (*Id.* at 2.)

The parties do not identify any case establishing whether a suit may proceed against a trade name under federal admiralty law.[4] However, under the relevant state laws,[5] such a suit is impermissible. *See Est. of Litwin v. Emeritus Corp.*, No. 14-5847, 2015 WL 3603953, at *3 (D.N.J. June 5, 2015) ("[U]nder New Jersey law a trade name is not a separate legal entity that can be subjected to suit."); *Ramirez v. Chip Masters Inc.*, No. 2011-5772, 2012 WL 5448190, at *1

---

[4] Both parties appear to agree that federal admiralty law applies to the claim at-issue in this matter. (TAC at 3; Reply Br. at 9.)

[5] "In the absence of controlling federal admiralty law to guide the resolution of a particular issue, the applicable state law must be applied." *N. Am. Specialty Ins. Co. v. Bader*, 58 F. Supp. 2d 493, 497 (D.N.J. 1999). Here, under either New Jersey law (where Defendants are citizens and where the incident occurred) or New York law (where Plaintiff is a citizen), the law is the same—a trade name is not amenable to suit. *See Mulheron v. Philadelphia Eagles*, No. 12-1753, 2013 WL 211349, at *5 (D.N.J. Jan. 18, 2013) ("If there is no conflict . . . there is no need to engage in the choice of law analysis.").

(E.D.N.Y. Nov. 7, 2012) ("In New York, a trade name is not subject to suit."). Thus, because this suit will continue against Jersey Shore—the proper legal entity for suit—and Plaintiff "does not object to dismissal of" TowBoat so long as suit will continue against Jersey Shore, the Moving Defendants' Motion to Dismiss TowBoat is **GRANTED**.

### B. DEFENDANT THARP

The Third Circuit described negligence in the admiralty context as "essentially coextensive with its common law counterpart, requiring:"

> (1) the existence of a duty required by law which obliges the person to conform to a certain standard of conduct; (2) a breach of that duty by engaging in conduct that falls below the applicable standard or norm; (3) a resulting loss or injury to the plaintiff; and (4) a reasonably close causal connection between the offending conduct and the resulting injury.

*In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 207 (3d Cir. 2013) (cleaned up).

Here, the Moving Defendants posit that the Complaint does not set forth a "legal duty" owed by Tharp to Plaintiff. (Mot. Br. at 2; Reply Br. at 5–11.) "Determination of the tortfeasor's duty, and its parameters, is a function of the court." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). This determination involves "a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Id.* A harm is the "foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention." *Id.* at 68.

In construing Plaintiff's pleading liberally and accepting its factual allegations as true, the TAC can be read as alleging that Tharp, when arriving on scene and initially agreeing to undertake

salvage operations, had a duty to not delay those operations.[6] (TAC at 4.) Plaintiff alleges that Tharp (and Jersey Shore) initially agreed to salvage the *Bolero* for $6,000 but later cut-off communication with Plaintiff and only returned to execute the salvage ten days later when the pay day was ten-times multiplied to $65,000. (*Id.* at 4.) Plaintiff certainly pleads sufficient facts to show that when Tharp and Jersey Shore abandoned the salvage, it was foreseeable that the *Bolero* would continue to sink and incur damage. Further, case law supports a duty in this context: "[o]nce a salvor is hired to render assistance to a ship in distress, the salvor must exercise reasonable care for the vessel to rescue it from a distressed condition." *Riverway Co. v. Trumbull River Servs., Inc.*, 674 F.2d 1146, 1153 (7th Cir. 1982); *see The Cape Race*, 18 F.2d 79, 81 (2d Cir. 1927) ("[E]very salvor is bound to the exercise of ordinary skill and diligence."); *Lloyd's Syndicate 1861 v. Crosby Tugs, L.L.C.*, No. 13-5551, 2014 WL 3587375, at *7 (E.D. La. July 21, 2014) ("[A] salvor must act in good faith and exercise reasonable skill and prudent seamanship."), *aff'd*, 598 F. App'x 337 (5th Cir. 2015). Thus, the Court is satisfied that Plaintiff adequately alleged duty to survive dismissal under Rule 12(b)(6).

The Moving Defendants other arguments for dismissal of Tharp are similarly unavailing. *First*, the Moving Defendants posit the theory of *respondeat superior* precludes suit against Tharp. (Mot. Br. at 4–7.) However, *respondeat superior* permits "a *principal* [to] be held to be directly or vicariously liable for the negligence of its *agent*." *Espinoza v. Princess Cruise Lines, Ltd.*, 581 F. Supp. 3d 1201, 1221 (C.D. Cal. 2022) (emphasis added). This theory of vicarious liability suggests

---

[6] In his opposition brief, Plaintiff also alleges that Tharp "permitt[ed] or direct[ed] towing at excessive speed," "fail[ed] to train or oversee staff in accordance with basic marine safety practices," "h[ad] knowledge of the unsafe conditions yet allow[ed] the operation to proceed unchecked," and "obstruct[ed] or delay[ed] remedial actions that could have mitigated loss." (Opp. Br. at 2.) However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988*)* (citation omitted). Consequently, the Court cannot consider these allegations at this juncture.

nothing as to whether the *agent* (here, Tharp) who actually committed the negligent acts can also be sued. While the Moving Defendants cite a plethora of cases supporting the proposition that an employer can be vicariously liable for the acts of its employee under maritime law, they do not appear to cite a single case that stands for the proposition that the employee cannot also be sued. (*See* Mot. Br. at 4–5.) Indeed, in at least one of the cases cited by the Moving Defendants, both the captain of a boat *and* his employer (the boat's owner) were held liable in a negligence action. *See CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 698 (1st Cir. 1995). Thus, the doctrine of *respondeat superior* only provides a basis to *include* Jersey Shore as a Defendant, not to *exclude* Tharp.[7]

*Second*, the Moving Defendants, interpreting Plaintiff's Complaint against Tharp as an attempt to pierce Jersey Shore's corporate veil and hold Tharp personally responsible for Jersey Shore's acts, argue that Plaintiff has not sufficiently pled any unfairness or injustice, or any other required element. (Mot. Br. at 7–8.) In order to hold the owner of a corporation personally liable for the corporation's acts, the plaintiff "has the burden of establishing by a preponderance of the evidence, that the corporation was an artifice and a sham designed to execute illegitimate purposes in abuse of the corporate fiction and the immunity it carries." *Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10-4345, 2011 WL 1253849, at *3 (D.N.J. Mar. 28, 2011) (quoting *Zubick v. Zubick*, 384 F.2d 267, 270 n. 2 (3d Cir. 1967)).

While the Moving Defendants are correct that Plaintiff has not alleged any facts to support piercing Jersey Shore's corporate veil, there is no indication from Plaintiff's pleading or briefing that he *intended* to pierce the corporate veil. Indeed, his allegations against Tharp arise out of

---

[7] For what it is worth, both of the potentially relevant state laws in this case would permit suit to proceed against Tharp. *See Briganti v. HMS Host Int'l*, No. 14-4813, 2015 WL 1268300, at *4 (D.N.J. Mar. 16, 2015) ("New Jersey law does not prohibit an action against an individual employee even where his employer is vicariously liable." (collecting cases)); *Norwalk v. Air-Way Elec. Appliance Corp.*, 87 F.2d 317, 319 (2d Cir. 1937) ("[T]he master and servant may be jointly sued.").

9

Tharp's own involvement in the rescue and salvage of the *Bolero*. (*See* TAC at 4; Opp. Br. at 2.) Thus, this argument by the Moving Defendants also fails. Furthermore, even if piercing the corporate veil was at issue here, "[w]hether the veil should be pierced is ordinarily a fact-intensive issue" and thus inappropriate to decide at the motion-to-dismiss stage. *Watson v. Sunrise Sr. Living Facility, Inc.*, No. 10-230, 2015 WL 4459362, at *13 (D.N.J. July 17, 2015). To the extent discovery reveals that there is no genuine dispute of material fact as to Tharp's lack of personal involvement in this case, Tharp may move under Rule 56 at the appropriate juncture.

Ultimately, without any viable argument for dismissal to be found in the Moving Defendants' briefing, its Motion to Dismiss Tharp is **DENIED**.

Therefore, **IT IS** on this 29th day of September, 2025,

**ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply (ECF No. 40) is **DENIED**; and it is further

**ORDERED** that the Moving Defendants' Motion to Dismiss (ECF No. 31) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Third Amended Complaint (ECF No. 24) is **DISMISSED** as to Defendant TowBoat; and it is further

**ORDERED** that Defendant Tharp **ANSWER** the Third Amended Complaint within 21 days pursuant to Rule 12; and it is further

**ORDERED** that the Clerk of the Court **TERMINATE** the motions pending at ECF Nos. 31 and 40.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**